59 F.3d 181
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Bela SZEPESI, Petitioner,
v.
DEPARTMENT OF AGRICULTURE, Respondent.
 No. 94-3439.
 United States Court of Appeals, Federal Circuit.
 March 14, 1995.
 
 Before NEWMAN, MICHEL, and PLAGER, Circuit Judges.
 PAULINE NEWMAN, Circuit Judge.
 
 
 1
 Bela Szepesi appeals the order of the Merit Systems Protection Board, DC0432930540-I-2, affirming the agency's removal of Dr. Szepesi for unacceptable performance. The Board's decision is affirmed.
 
 BACKGROUND
 
 2
 Dr. Szepesi received an unacceptable performance rating from his supervisor on June 12, 1992, and was provided with a notice of performance improvement period (PIP) on August 18, 1992. This notice required that Dr. Szepesi demonstrate progress in the area of "conducts research," a critical element of his position, in order to obtain a "fully successful" rating and avoid possible reassignment, demotion, or removal. The PIP listed three specific research projects in which progress was required: a rat infusion study, a survey of amino acid levels in rats, and a study of the effect of various sugars on rats. All these projects had been defined as Dr. Szepesi's specific goals, in performance standards developed in October 1991. The PIP also stated that Dr. Szepesi was to "cease planning of other experiments until results from these three experiments are demonstrated."
 
 
 3
 Over the course of the PIP period, which lasted until November 30, 1992, Dr. Szepesi achieved limited progress on one study, failed to achieve meaningful progress on another, and made no progress on the third; he also conducted other research not listed in the PIP. Because he failed to demonstrate satisfactory progress in the areas required by the PIP, Dr. Szepesi was removed.
 
 DISCUSSION
 
 4
 * Dr. Szepesi argues that the performance standards as administered by the agency were invalid. The Board found that the PIP listed only specific work that Dr. Szepesi was to perform, but that the agency gave sufficient additional content to that work through Dr. Szepesi's weekly meetings with his supervisor and through memoranda written by the supervisor. The Board also emphasized that performance standards for technical or scientific positions need not be strictly objective and may require subjective judgment. On review of the material provided and the arguments presented, we do not discern reversible error in the Board's ruling that the performance standards met the requirements of 5 U.S.C. Sec.4302(b)(1).
 
 
 5
 Dr. Szepesi argues that he was not given an adequate opportunity to demonstrate progress during the PIP because the meaning of refraining from "planning of other experiments" in the PIP was not clear, and because this requirement was impossible to meet. The Board found that this requirement was intended to direct Dr. Szepesi's efforts toward the specific experiments described in the PIP, and that the planning of experiments was not relevant to the specific performance required by the PIP.
 
 
 6
 Dr. Szepesi asserted that he met all of the PIP requirements. The Board upheld the agency's conclusion that Dr. Szepesi did not infuse even one rat. Dr. Szepesi had obtained a small amount of data on amino acid levels; those data, he agreed, were "suspect," and the Board held that Dr. Szepesi did not produce useful, reliable, or publishable data on amino acid levels. Although Dr. Szepesi argues that another scientist who instructed him in the amino acid analysis "sabotaged" the analysis and "lied," Dr. Szepesi did not substantiate that charge, and the Board did not find credible the contention that the method for amino acid analysis was incorrect and would not work.
 
 
 7
 The Board's findings are supported by substantial evidence, and the conclusions based thereon must be affirmed.
 
 B
 
 8
 Dr. Szepesi also argues that he was removed in retaliation for disclosures that are protected under the Whistleblower Protection Act, 5 U.S.C. Secs.1221, 2302(b)(8). The Board held that even if the disclosures made by Dr. Szepesi were protected disclosures within the meaning of the Act, he failed to demonstrate that these disclosures were a contributing factor in his removal. The Board held alternatively that even assuming that the disclosures were a contributing factor, Dr. Szepesi's unacceptable performance was such that there was "clear and convincing evidence that the agency would have removed him in the absence of the disclosures." This comports with the statutory requirement, 5 U.S.C. Sec.1221:
 
 
 9
 (e)(1) Subject to the provisions of paragraph (2), in any case involving an alleged prohibited practice as described under section 2302(b)(8), the Board shall order such corrective action as the Board considers appropriate if the employee, former employee, or applicant for employment has demonstrated that a disclosure described under section 2302(b)(8) was a contributing factor in the personnel action which was to be taken or is to be taken against such employee, former employee, or applicant.
 
 
 10
 (2) Corrective action under paragraph (1) may not be ordered if the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure.
 
 
 11
 See Marano v. Department of Justice, 2 F.3d 1137, 1141-43 (Fed. Cir. 1993) (when the protected disclosure contributed in any way to the personnel action, the employee is entitled to corrective action unless the government can meet the burden of demonstrating by clear and convincing evidence that the same personnel action would have been taken without the disclosure).
 
 
 12
 In this case we agree with the Board that the government met its burden. The MSPB's decision has not been shown to be subject to reversible error.